This case is Richer v. Morehead. Mr. Koch? Koch, Your Honor. Good morning. May it please the court, Bradley Koch appearing on behalf of plaintiffs' appellants Marvin and Gail Richer. Mr. Richer, this case requires the court to answer a rather simple question. The question is, did Mr. Morehead comply with all of the conditions preceding within an equity participation agreement to timely and properly consummate an option to convert his equity participation interest to a demand note? To answer this question requires reference in the interpretation of two provisions within the equity participation agreement. Paragraph 5, which sets forth the procedure for converting an equity participation interest to a demand note, and the notice provision within the agreement, which sets forth the methods by which a party can provide notice under the equity participation agreement. There are two express conditions within paragraph 5 of the equity participation agreement. So your argument is that the notice has to be simultaneous with the exercise of the option? Yes, Your Honor. The argument that we believe... So you can't mail or anything. You have to hand it to him. No, Your Honor. The exercise of the option to convert must be provided on an anniversary date. That can be accomplished three ways. First way would be to mail the notice on an anniversary date. That's alternative one. Alternative two... Whether it's a postmark basis? Yeah, I mean, if it's postmarked November 25th, which is an anniversary date, that would be sufficient. The agreement does not say that it has to be received on an anniversary date, only that it has to be provided on an anniversary date. The second way you could do it would be by hand delivery. The third way would be by facsimile transmission. What sense does any of this make? In terms of what, Your Honor? The purpose. You know, the parties negotiated between one another on this very particular paragraph and agreed upon the language. Well, usually there's a reason for a provision in a contract. I've heard an interpretation. Why would it matter that the notice... I mean, you'd think you'd prefer the notice to be mailed earlier. Well... Why would you want the notice, the mailing, delayed to the date when the option is exercised? Because that's what the agreement says. No, what's the purpose, the reason? Is it some senseless piece of legal error, or is there some reason for why you want the notice and the exercise of the option to be simultaneous? Well, number one, Your Honor, I was not present at the time. That's not an answer. So, in other words, you haven't made any effort, you haven't made any attempt to find out why the parties would have done what you say they did. We did present the court with affidavits by the parties that were involved in negotiating and did provide the court with drafts of the... prior drafts, if you will, of the equity participation agreement where there were changes made to the provision that provided for conversion of the equity participation interest to a demand note. And under Illinois law, Your Honor, it's... What changes were made in the notice requirement? Well, number one, the anniversary date itself was changed at least... That's the option date, that's not the notice date. What changes were made in the notice? In the notice provision? To the best of my knowledge, Your Honor, as I stand here today, there were no changes to... Well, then it's irrelevant. ...the notice requirement. So you are not able to answer my question. Mr. Cook... Why would the notice date be made simultaneous with the option date? Mr. Cook, under your theory, what is the weight or significance of the phrase no earlier than the date of the letter? That is, exercise. It says, participant will exercise this option by written notice to owner specifying the date of the conversion election no earlier than the date of the letter. Doesn't that suggest you can send a letter in advance? And what do you think that language means? Well, Your Honor, I believe what that language says. Number one, there is no indication in the agreement itself that the date of conversion election, Your Honor, can be any date so long as it's not earlier than the date of the letter. Had the parties wanted the date of conversion election to be an anniversary date, it would have been very simple to do that, indicating that the date of conversion election shall be an anniversary date. That was not said, Your Honor. So I'm not tracking you on this. Okay. I'll back up and go over it again. The date of conversion election is one of the items that must be specified in the letter providing notice of the exercise of the conversion option. That date of the conversion election is to be specified in the letter, and frankly, Your Honor, it can be any date. It doesn't have to be an anniversary date. It can be any date so long as that date is not earlier than the date of the letter. That's what the language of the agreement provides. Moreover, Your Honor, if- That sounds as if the letter can be any date before the option, effectiveness of the option exercise specified in the letter. Your Honor, I believe that, again, and I hearken back, there are two requirements to satisfy converting from an equity participation interest to a demand note under the language in the agreement as it has been drafted. Number one, that notice be provided on an anniversary date, because if the agreement specifies that's the exercise of the conversion- Yes, but it's senseless. How do you get that out of this language? I just don't understand this. Well, Your Honor, in paragraph five it says, you know, beginning on the third anniversary date of the agreement, and recurring each subsequent anniversary date thereafter, they'll have an option to convert the equity participation interest to a demand note. Then later in that paragraph it says, participant will exercise this option by written notice to the owner. That's the exercise. And then you deal with the content of the actual mechanics, if you will, of converting the equity participation interest to a demand note, which requires- Okay. If I got this straight, if Mr. Moorhead had sent his letter- by the way, is it the date of the letter or the date of the postmark? It's the date of the letter and the date it was mailed, delivered, or sent by fax transmission. Oh, wait a minute. So if it's delivered on the 25th, it's okay? 25th would be, yes, Your Honor. Mailed on the 25th is okay? Mailed on the 24th and delivered on the 26th is a failure. Would be too early. Receipt is- If he mails on the 22nd and it gets to you on the 25th, that's okay. No. This is absurd. You say it has to be mailed on the day. It has to be mailed on- I thought you just said if it's received on the 25th, that's good enough. Right? Your Honor, there is no mention that receipt is not a significant item here. I mean, it can be received four or five days after the anniversary date, so long as it's provided on that date, the notice is mailed on that date, or hand-delivered, Your Honor, or sent by fax transmission. It's senseless. Does it matter whether the fax machine for the recipient is turned on? I can't answer that question, Your Honor. I don't know. That sounds critical under your theory. The agreement simply says that it can be accomplished by fax transmission. But you can't give any reason why anybody would make such a provision. I didn't participate in the negotiations, Your Honor. It's totally senseless, and you haven't asked. You haven't asked anyone, apparently. I did ask my client, and he indicated to me that this was a specifically negotiated provision. Why? Did he tell you why? Did you ask him why did you do that? I can't recall, Your Honor, to be honest with you. Mr. Cook, what happens if the odds are pretty good that week in November, what happens if the 25th is a Sunday, a Saturday, or a Thanksgiving day? That was not addressed in the agreement, Your Honor. It wasn't? No. You could mail it, certainly, on a Sunday. Nothing to prohibit that. Get a postmark? Pardon me? I don't think you can get a postmark. And you could deliver it, and you could fax it on a Sunday as well, Your Honor. What are the stakes here, Mr. Cook? Your Honor, what we have is under the decision, which was affirmed by the United States District Court, Mr. Moorhead, and I'll use a round number, and Mr. Osler can correct me if I'm a little bit wrong on this, but using a round number, Mr. Moorhead was allowed a claim in the amount of approximately $945,000 against Mr. and Mrs. Richard. Is it collectible? Where does that fit into the overall bankruptcy? That particular claim would be considered an unsecured claim, and the bankruptcy was a Chapter 11, Your Honor, and the plan of reorganization was confirmed. The plan provides that unsecured creditors are to be paid in full over a term, amortized over a term of ten years, a balloon payment, if my memory is right, in seven years. Okay. Thank you, Your Honor. Okay. Well, thank you very much. Thank you. Mr. Cook. Mr. Osler. Good morning, Your Honor, counsel. Again, my name is Ray Osler. I'm appearing here on behalf of the appellee, Patrick Moorhead. Your Honors have collectively heard a lot of very complex cases this morning. This is not one of them. This is a breach of contract case, essentially, where the interpretation of one provision in an equity participation agreement is at issue. The content of the notice, what was in the notice, what was contained in the notice, there is absolutely no dispute. It accurately depicted everything that's required by Section 9 of our equity participation agreement. The only issue is the when. When should the notice or could the notice have been sent? And according to Mr. Richer, it could only be sent on an anniversary date. The temporal restriction that they want to put into the equity participation agreement just simply doesn't exist. We agree that all of the focus should be on Section 5 of the agreement. Section 5 has three paragraphs. Two of the paragraphs aren't applicable. The only paragraph that is at issue here has five sentences. Nowhere in those five sentences is there a temporal restriction on the date the notice should be sent. In fact, as Your Honors have pointed out, it flies in the face of the parenthetical expression that's found in the agreement that says the notice of conversion can be no earlier than the conversion date. Well, why else would that be there unless you could send the notice out in advance of the conversion date? The agreement is quite clear. The conversion dates are all tied to the anniversary dates of the equity participation agreement. Mr. Osler, as you read this, do you think could Mr. Moorhead have sent in a notice that said, I'm exercising my option and I want it to take effect on January 1? No, he would have to say it takes effect on an anniversary date. We've cited to the Bondi case, which is, I think, similar to this. The way in which these equity participation agreements, and there were a total of five of them, the way in which these worked was you would supply cash to Mr. Richer, and then you could convert that equity investment. If he sold his development during or before the option came up, you would get a percentage of the equity in this property. It's a little bit like the movie The Producers. You could get a lot of people to invest a lot of money, and if the project failed, they would never come asking any questions. Well, here, the only equity participant to attempt to convert his equity into Mr. Patrick Moorhead. And Your Honor had asked about what's the real-world significance of all this. Well, it is a roughly $45,000 debt. The Chapter 11 confirmed plan calls for the unsecured creditors, of which Mr. Moorhead would be one, to be paid 100%. None of the other equity participants are getting anything because they elected, if you will, not to convert from equity into debt. So they don't get anything? They will get nothing. All this arises out of the fact that this is an Illinois land trust? No, it doesn't really enter into it. The fact is it was in a land trust. An Illinois land trust is a little odd to begin with. On the scale of things that are odd, that's pretty odd, I want to tell you. But it doesn't factor into it. It's personal property. Well, whether that's a factor or not, in Your Honor's mind, it really isn't something that's been addressed in the briefs, and I don't think any of us really factored into whether or not that would come into play. Again, this is one of those peculiar cases where we both agree on everything about what happened here, except whether the notice should have been sent on an anniversary date and only on an anniversary date. Your Honor said, well, what's the real world implications of this? Would it ever happen? Of course it would never happen. If you were sitting in Mr. Richer's shoes, you want to know and schedule when things are going to happen, when events are likely to occur. If you know that the conversion option is only available on an anniversary date and your obligation to pay is six months later, that's what you want in an agreement. You want to know that there is that certainty so you can plan your financial affairs, not the way that they're construing this agreement to be, I could convert on any date whatsoever in the future. I could convert three years from now as long as I send you my notice on an anniversary date. Well, why would you ever do that? If you're going to convert from equity to debt, you want to start that clock running immediately and not some date in the future, which is what Mr. Richer's interpretation of the agreement would require. I only have one other comment, and that has to do with this court decided a case not that long ago regarding a dispute between attorneys and a fee arrangement, a fee contract. The case is Hess v. Bresney, and in that case the discussion by the court was what's the most plausible interpretation of a fee arrangement between attorneys as to when fees were generated or fees received. And this court held that the most plausible explanation should prevail. In fact, what the court said, the exact quote was, the most plausible reading was, quote, so easy in fact that even a group of lawyers could figure it out. That's what I think we have here. The most plausible reading of Section 5 is that my client properly perfected his option by sending a notice no earlier than the anniversary date. He identified the anniversary date. The content of the notice is not in dispute, and I think the decision of the district court should be affirmed. Thank you. Okay, thank you, Mr. Osler. Mr. Koch, do you have anything further? Just briefly, Your Honor, because I believe I'm out of time. Mr. Osler did mention the Bondi case. The one item that the court did look at in Bondi, which is an Illinois Supreme Court decision, was the conduct of the parties after the notice was sent. If you look at the conduct of the parties after the notice was sent, in this case, all activity indicates that the option had not been properly exercised. No junior mortgage was provided to Mr. Moorhead, although he requested one. A demand note was not provided to Mr. Moorhead by Mr. Richer, and the amount of the demand note, which was due to be paid per the notice on May 24 of 2010, was not paid. No action was taken after that time by Mr. Moorhead to attempt to collect or enforce the obligation. And when was the Chapter 11 filing? The Chapter 11, Your Honor, was filed. I can't remember the precise date, but it was September, I believe, 24th, 23rd or 24th of 2010. The same year. Correct, Your Honor. And the due date on the demand note per the notice would have been May 24th of 2010, and the record's clear. No action was taken after that point by Mr. Moorhead to try to enforce the obligation. Thank you for your time. Okay. Thank you very much to both counsel.